JONES, JUDGE:
The claimant, Barbara Pace, of Philadelphia, Pennsylvania seeks damages from the respondent, Department of Natural Resources, for injuries sustained by her when she fell on an asphalt-paved path in Hawks Nest State Park in Fayette County on August 21, 1970. She was visiting her sister, Quantina Peck, in Beckley and they, along with a friend, Bernard Malloy, of Camden, New Jersey were on a sightseeing drive when they stopped at the Park recreation area. The claimant and her sister both testified that the party of three walked along a path or paths to a picnic table on an elevated shelf on the side of the hill where they spent some time and then started to walk down a steep path directly below the picnic table. Walking in front of her two companions the plaintiff testified that her heel caught in a root growing across the path which was hidden from sight by leaves and pine needles. She fell to the ground and according to her version of the accident she rolled down and against a log at the foot of the short walkway where she was helped to a sitting position until an ambulance arrived and took her to the Montgomery General Hospital. The claimant’s testimony was corroborated by that of her sister. Bernard Malloy did not testify and no reason was given for his absence. At the hospital it was found that the claimant’s left ankle was fractured and she underwent a closed reduction with cast application. She was discharged on August 27, 1970 “in good condition”, but she required further medical treatment and a second cast after she returned to Philadelphia. The claimant lost 70 days’ work as an employee of the Aviation Supply Office, Department of the Navy, and incurred substantial medical and hospital expenses.
*288 A different version of the accident was sworn to by a witness for the respondent, directly contradicting the claimant concerning vital, factual issues. James Ingram, a caretaker at the park for fourteen years, testified that he saw the claimant and her companions in the vicinity of the gift shop and later saw them walking down the asphalt-paved path which leads to a museum farther up the hillside and also has a fork leading to the picnic area. Describing the fall, Ingram testified as follows: “I was carrying souvenirs from the supply room just above the snack bar and I heard this woman holler. As I was walking up the steps with the box of souvenirs, I saw her slip and fall. One foot went under her and she just more or less sat on her foot as she went down.” This witness placed the fall at a point on the pathway above and to the left of the picnic area and about 100 feet from where he was standing. He went to the claimant and with her companions helped her up and to the steps near where she fell. There the claimant sat down and later, according to Ingram, she was helped by her companions, hopping on one foot, to the log from which she was taken to the ambulance. Another employee of the respondent, Paul M. Seacrist, identified the claimant and described the lay-out of the area, but was not present at the time of the fall.
In view of the contradictory testimony and the obvious importance of a better understanding of the terrain, location and grade of paths and other physical aspects of the site of the accident, the Court determined to exercise its right to gather information on its own initiative, as provided in Section 15, Article 2, Chapter 14 of the Code of West Virginia. On May 16, 1973, the Court went upon the subject premises, carefully inspected the area and arrived at certain conclusions as follows: Visibility as affected by foilage was substantially the same as on the day of the accident; the witness Ingram easily could have seen the claimant fall at the place he described his testimony; both paths in question lead to the picnic tables; the paths apparently were unchanged except that the one directly in front of the picnic tables where the claimant says she fell had been resurfaced and roots could be seen imbedded in the asphalt; the latter path is very steep and it is obvious that an ordinary, prudent person would exercise great care in traversing it; the fork from the museum walkway to the picnic tables has only a slight grade and is a much safer exit from that location; the museum path is not so steep as the one directly below the picnic area, but it too calls for a high degree of care; the type of footwear worn would affect the degree of danger in traversing the *289 walkways; and this is a rustic park area where walkways are called “paths” and while they are asphalt-paved, they are not the sophisticated sidewalks found in urban areas or around more conventional public buildings.
Both paths in question in this case lead to and from the picnic tables where the claimant was shortly before the accident, but obviously she did not fall and break her ankle while walking along both of them at the same time. Before its view of the premises, the Court contemplated a decision wherein it would be compelled to conclude that the witnesses for one side or the other were not telling the truth or were strangely confused or misled. However, there are facts and circumstances in this case which provide a substantial basis for decision without reference to the veracity of the several witnesses.
The claimant testified that she was wearing sandal-type shoes, but she could not remember the composition of the heels or soles. The Court found from personal experiments that while wearing ordinary shoes with leather soles and rubber heels, the descent along the short walkway on which the claimant marks her fall was one requiring considerable caution. The steep descent is enough to put a person on notice that he should proceed with care and that each step should be closely watched. In view of this situation and assuming that this is where the claimant fell, we believe that she must have been aware of and therefore assumed a patent risk, particularly in view of the fact that there was a safer walkway available to her. The Court is further of the opinion that if the claimant had exercised ordinary care for her own safety, this accident would not have occurred. This was a bright, sunny day and if the claimant had seen the condition of the walk, as she could have and should have, and had proceeded carefully, as the circumstances required, she could have avoided any obstruction and would not have fallen. There is a duty on the respondent to maintain the paths or walks in a reasonably safe condition as befits a rustic park area; but regardless of fault on the part of respondent under one conflicting version of the accident, the Court finds that the claimant failed to exercise due and reasonable care and that her negligence proximately contributed to her injuries, thereby barring a recovery in this case.
Claim disallowed.